IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID C. MISNER, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN E. POTTER, Postmaster General, and THE UNITED STATES POSTAL SERVICE,<br><br>Defendants. | **ORDER and<br>MEMORANDUM DECISION**<br><br><br><br>Case No. 2:07-CV-330 CW |

David C. Misner has brought this action against the United States Postal Service and the Postmaster General. Mr. Misner alleges that Defendants violated federal statute by refusing to place him in pools of candidates for certain upper management positions because of his age. Defendants deny this allegation. Now before the court are the parties' cross motions for summary judgment. For the reasons discussed below, the court finds that summary judgment in Defendants' favor is appropriate here.

**BACKGROUND**

Mr. Misner has worked for the USPS since 1969. In 1975, Mr. Misner started working in management positions and worked in management to the present. Mr. Misner's claims arise

from the Defendants' corporate succession planning process used in 2003 and 2004. In brief, the USPS established various pools of candidates to be considered for specified upper management positions when those positions became vacant. For example, when a plant manager left, Defendants would consider candidates in the plant manager "pool" to replace him or her rather than accept open applications from all qualified USPS employees. To fill the pools, the Defendants accepted applications from minimally qualified candidates at the USPS. The applications were then reviewed by a nine member panel of USPS executives, which made the final decisions on who would be included in each pool.[1]

In 2003, Mr. Misner, who was over 56 years old at the time, nominated himself to five pools. In July 2004, Mr. Misner was notified by letter that he had not been selected for any of them. On May 19, 2007 he filed the present action against Defendants. In his complaint, Mr. Misner alleges that the Defendants violated 29 U.S.C. § 633a, the Age Discrimination in Employment Act, by deciding not to place him in the pools because of his age. The complaint also asserts class action allegations, but no class has been certified, nor has Mr. Misner moved for class certification.

Now before the court are the parties' cross motions for summary judgment. Mr. Misner argues that he has made his *prima facie* case of age discrimination and that the Defendants have offered no facts supporting a non-discriminatory motivation to rebut that case. Defendants contend that Mr. Misner has failed to establish his *prima facie* case because he has not come forward with sufficient facts to allow an inference of discrimination. Defendants further assert

---

[1] One of the panel members has since passed away.

that even assuming Mr. Misner has met his initial burden, Defendants have shown evidence of non-discriminatory reasons for not including Mr. Misner in the pools and that Mr. Misner has not brought evidence sufficient for a reasonable fact finder to conclude that Defendants' reasons were pretexts for age discrimination. As explained further below, the court finds that Mr. Misner met his *prima facie* case, that Defendants submitted evidence that their decisions were legitimate and non-discriminatory and that Mr. Misner did not carry his burden of bringing evidence that these reasons were pretexts for age discrimination.

## ANALYSIS

**I.      Summary Judgment Standard**

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Faustin v. City & County of Denver, Colo., 423 F.3d 1192, 1198 (10th Cir. 2005) (citations and internal quotation marks omitted). See also Fed R. Civ. P. 56(c). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Of course, at the summary judgment stage, the parties bear burdens of production rather than burdens of persuasion." Riggs

v. AirTran Airways, Inc., 497 F.3d 1108, 1114 (10th Cir. 2007).

If, as here, parties file cross motions for summary judgment, courts are "entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Denying one party's cross motion for summary judgment, however, does not does not require the court to grant the other one. See Buell Cabinet v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).

**II.    Burden-Shifting Analysis**

The parties agree on the general framework to analyze Mr. Misner's ADEA claim at the summary judgment stage.[2] Namely, because Mr. Misner's evidence of alleged discrimination is indirect, the court must use the three-part burden-shifting test outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See, e.g., Rivera v. City and County of Denver, 365 F.3d 912, 920 (10th Cir. 2004) (Title VII and ADEA action). First, Mr. Misner must show facts meeting the elements of a *prima facie* case of age discrimination. See id. If Mr. Misner successfully does so, Defendants must provide evidence supporting non-discriminatory explanations for rejecting Mr. Misner from the pools.[3] See id. Assuming the Defendants provide

---

[2] The court notes that the Supreme Court has recently issued an opinion discussing the burden of persuasion under the ADEA, Gross v. FBL Fin. Servs., Inc., 557 U.S. ___, 2009 WL 1685684 (June 18, 2009). The court does not understand Gross as altering the use of the McDonnell Douglas framework at summary judgment on ADEA cases.

[3] Although Mr. Misner was not technically denied a promotion when he was not selected for the pools, the court nonetheless views this as a failure to promote case because Mr. Misner could not even be considered for promotion to the upper management positions unless he was placed in the relevant pool.

such reasons, the burden shifts back to Mr. Misner to present evidence tending to show that the reasons Defendants proffered are actually pretexts for age discrimination. See id.

### A. Mr. Misner Made His *Prima Facie* Case

The parties broadly agree on the analytical structure that applies here. They purport to disagree, however, on what Mr. Misner must show to make his *prima facie* case of age discrimination in a failure to promote context. Mr. Misner asserts that to do so, he must show that "(1) he was over the age of 40; (2) he applied for and was qualified for the executive pools; (3) despite being qualified, he was rejected; and (4) after he was rejected, the position was filled or remained open." (Pl.'s Memo. in Support of SJ at 2.) In support of this contention, Mr. Misner argues that Tenth Circuit cases in the discriminatory failure to promote context appear to limit their discussion of the *prima facie* case to these elements, citing, for example, Jaramillo v. Colorado Judicial Dep't., 427 F.3d 1303, 1306-07 (10th Cir. 2005) (Title VII action). Defendants argue that in addition to the elements cited by Mr. Misner, he must also show as an element of his *prima facie* case that "there is some evidence the employer intended to discriminate against him." (Def.'s Memo. in Support of SJ at 11, quoting Pippin v. Burlington Resources Oil and Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006).) Mr. Misner disagrees, arguing that showing his listed four elements gives rise to an inference of discrimination.

The court views this dispute as purely semantic. As emphasized by the Tenth Circuit in Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005), the *prima facie* inquiry is not meant to be rigid or rote, but is a flexible test that should fit the facts of the case. Rather than focus on an unvarying recitation of elements, the key question asked by the court at this stage is whether

there is "a logical connection between each element of the prima facie case and the inference of discrimination." Id. (citations omitted).  Accordingly, the fact that the pools Mr. Misner applied to were filled is properly considered at this stage of the analysis if that fact has a logical connection to Mr. Misner's claim of discrimination.  Here, Mr. Misner contends that the age of those selected for the pools (and the age of the candidates who were ultimately selected from the pools) allows an inference of age discrimination.  In other words, Mr. Misner does not deny that raising an inference of discrimination is the underlying task in making his *prima facie* case, but merely recites the elements of the inquiry without expressly naming evidence of discrimination as one of them.  As a practical matter, then, the court perceives no difference in the parties' positions on the requirements of a *prima facie* case.

The question then becomes whether Mr. Misner has presented enough evidence to meet his burden of making a *prima facie* showing of age discrimination.  "The initial burden of proving a prima facie case under McDonnell Douglas is not onerous."  Bittel v. Pfizer, Inc., 307 Fed. Appx. 132, 138 (10th Cir. Jan. 9, 2009) (ADEA action).  There is no dispute about most of the elements here.  That is, the parties agree that Mr. Misner met the qualifications for the five pools for which he applied, was over 40 when he applied, he was rejected from all of the pools and that the pools, when filled, contained people younger than Mr. Misner.  Nor is there a dispute that when open positions were filled from those pools, the people promoted were younger than Mr. Misner, some of them considerably younger.

The parties' core dispute at this stage is whether Mr. Misner has raised sufficient evidence that the way in which the pools and positions were filled suggests discrimination.

Considering that the *prima facie* hurdle is not meant to be high, the court finds that Mr. Misner has met his burden. Cutting right to the core issue, all of the people who were accepted into the pools from which Mr. Misner was rejected were younger than Mr. Misner, and all of the candidates who were ultimately hired out of the pools were younger than Mr. Misner. And taken at face value, these facts could lead a reasonable person to conclude that age discrimination was behind Defendants' decisions. As the court understands Mr. Misner's *de minimis* burden at the *prima facie* stage, these facts carry the day for him.[4] See Maughan v. Alaska Airlines, Inc., 281 Fed. Appx. 803, 807 (10th Cir. June 12, 2008) (undisputed evidence that ADEA plaintiff had been replaced by a younger worker sufficient to establish *prima facie* case).

    **B.    Defendants Offer Legitimate, Non-Discriminatory Reasons for Not Selecting Mr. Misner for the Pools**

Because Mr. Misner met his initial burden, it falls on the Defendants to present evidence that they had "a legitimate, non-discriminatory reason for the adverse employment action." Bittel, 307 Fed. Appx. at 137. Similar to making a *prima facie* case, Defendants' "burden to articulate a nondiscriminatory reason has been characterized as an 'exceedingly light' one." Anaeme v. Diagnostek, Inc., 164 F.3d 1275, 1279 (10th. Cir. 1999) (citation omitted) (Title VII and race discrimination action). For the reasons discussed below, the court believes that the

---

[4] In attacking Mr. Misner's *prima facie* case, Defendants offer several reasons why they do not agree that the fact that people younger than Mr. Misner made the pools and received promotions was discriminatory. The court does not understand these arguments to be germane to the *prima facie* inquiry, which does not require a plaintiff to conclusively show age discrimination, but simply to raise an inference that it could have happened. Instead, as is made clear below, the court views Defendants' evidence as circumstantial support that their actions were legitimate and non-discriminatory

Defendants have met this burden.

Initially, Mr. Misner argues that Defendants have no admissible evidence to support their legitimate, non-discriminatory reasons for not including Mr. Misner in the pools. Mr. Misner observes that Defendants admit that none of the eight surviving members of the panel that rejected Mr. Misner have a specific recollection of their reasons for not selecting him and that there are no contemporaneous records reflecting their thought process. Based on this admission, Mr. Misner maintains that any explanations the panel members or Defendants give now are purely speculative, *post hoc* justifications that are inadmissible and should be given no weight.

But the Tenth Circuit has stated otherwise in Anaeme. In Anaeme, an applicant charged racial discrimination against a company that had not hired him, but no one at the potential employer recalled the applicant when the suit was filed. 164 F.3d at 1279-80. Making matters more complicated, though the plaintiff asserted that he had submitted about sixty applications to the company, the company did not have a single one of his applications in its records. See id. To counter the plaintiff's *prima facie* case of discrimination, the employer offered the non-discriminatory reasons that "(1) [plaintiff] never applied, (2) his applications were lost or discarded by the personnel department or (3) his applications were rejected because of facial deficiencies." Id. at 1280. In support of the third type of evidence, the employer had its decision makers review the plaintiff's applications and opine that they would not have accepted those applications due to weaknesses on their face. See id. at 1279.

The plaintiff in Anaeme argued that the company's evidence should not have been allowed to rebut his *prima facie* showing because it was offered long after the non-hires had

occurred, making it "after acquired" evidence.  Id. at 1280.  The court rejected this argument.

Specifically with respect to the third type of evidence, the court reasoned that:

> [E]vidence concerning the quality of Plaintiff's applications and resumes and the nature of his employment history simply constitutes circumstantial proof of Defendants' legitimate, nondiscriminatory reason for not hiring Plaintiff.  This evidence helps to explain Defendants' general employment practices by showing how they customarily responded to applications similar to Plaintiff's.  From this circumstantial evidence, the jury could infer that Defendants did not intentionally discriminate against Plaintiff on the basis of race.

Id.  The court emphasized that allowing the company's evidence was supported by a strong

policy reason, explaining that:

> If we accepted Plaintiff's argument, such prospective employers [i.e., those with no record of the plaintiff] would never be able to rebut a prima facie case because they would be unable to proffer a reason other than that they did not have a record of their relationship to the plaintiff.  This result is not consistent with the intent of Title VII or our case law.

Id.

In this case, Defendants have offered a non-discriminatory reason for not putting Mr.

Misner in the pools.  That is, Defendants assert that the decisions were based on merit and Mr.

Misner's qualifications were not sufficient to convince the panel that he belonged in any pool.

But the Defendants concede that none of the surviving panel members have any clear memory

about why they did not select Mr. Misner for the pools, nor do Defendants have any records

created during deliberations reflecting the panel's thought process.  Instead, Defendants have

offered (1) the panel members' recollection of their goals in filling the pools and their current

assessments of Mr. Misner's resume in relation to the qualifications they sought, (2) a

comparison of Mr. Misner's qualifications and the qualifications of some younger candidates

who were selected for the pools and later promoted and (3) a statistical analysis that the Defendants argue shows that age was not a significant predictor of whether an applicant would be placed in the pools.[5]

The court is convinced that Anaeme's logic applies here. As in Anaeme, precluding Defendants from offering these types of evidence would be akin to holding them liable under the ADEA for failure of memory and failure to keep detailed records of the decision making process. And as in Anaeme, the court views the types of evidence offered by Defendants not as speculative or inappropriate after-discovered evidence, but as relevant circumstantial evidence of the Defendants' reasons for including who they did in the pools and for not including Mr. Misner. Mr. Misner's strengths and weaknesses at the time of the application processes have not changed, nor have the qualifications of the younger candidates or the statistics about the ages of the applicants and the ages of those accepted. While the panel members do not remember why they did not select Mr. Misner, their current assessment of his candidacy and the candidacy of others is circumstantial evidence of what they were thinking during the process. And such evidence is admissible because the panel members have personal knowledge about the way they would currently evaluate Mr. Misner's and other candidates' resumes and what their requirements for filling the pools were at the time they did so. See id. at 1280. Similarly, statistical analysis suggesting that the make up of the ages of those in the pools was roughly equivalent to the make up of the ages of those who applied for the pools is circumstantial (though

---

[5] All the panel members also deny that age was something they considered in filling the pools. The court has given these denials no weight at this stage, however, given that the question of whether age discrimination happened is the ultimate conclusion at issue here.

not conclusive) evidence that age was not a factor in the decision-making process.  See Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1115 (10th Cir. 2007) (probative value of statistics varies based on context).

From its careful review of the circumstantial evidence presented by Defendants, the court is convinced that Defendants have offered a legitimate, non-discriminatory reason for rejecting Mr. Misner from the pools.  Namely, Defendants have shown facts supporting a conclusion that the decisions about who to place in the pools were based on merit and that Mr. Misner's qualifications were either insufficient to warrant selection by the panel or other successful candidates were more attractive for reasons unrelated to age.

For example, three panel members testified that staying in the same position for over ten years was considered a weakness in Mr. Misner's resume.  Other panel members pointed out that Mr. Misner's most relevant experience was over ten years old.  When comparing Mr. Misner's application for a district manager position against a successful younger candidate's application, one panel member pointed out that the younger candidate had experience in delivery programs that Mr. Misner lacked.  This type of evidence could be used by a reasonable fact finder to conclude that Defendants acted for legitimate reasons and did not discriminate because of age when they did not put Mr. Misner in the pools.

### C. Mr. Misner Presents No Evidence that Defendants' Reasons were Pretexts

Once Defendants meet their burden of offering legitimate, non-discriminatory reasons for its decisions, the burden of showing facts suggesting that these reasons are pretexts falls on Mr. Misner.  Mr. Misner need not support his claim of pretext with direct evidence, but instead may

base his argument on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." Turner v. Public Serv. Co. of Colo., 563 F.3d 1136, 1143 (10th Cir. 2009) (addressing Title VII cases) (citations and internal quotation marks omitted). "Evidence of pretext may include 'prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria.'" Jaramillo, 427 F.3d at 1308 (citation omitted). (Here, of course, the relevant policy and practice would be in relation to the age of employees.)

At the same time, when considering a plaintiff's putative evidence of pretext, the court must keep in mind that its "role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." Timmerman, 483 F.3d at 1115, quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.1999). Accordingly, courts "do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." Riggs, 497 F.3d at 1118-19.

In support of his argument that the Defendants' reasons are pretexts, Mr. Misner offers various arguments and evidence. First, Mr. Misner offers what he views as direct evidence of discrimination: a November 2, 20000 letter indicating that some executives believed, after attending a corporate succession conference in 2000, that "the Postal Service does not value, and in fact would prefer to lose, leaders age 50 and over." (Ex. D. to Pl.'s Brief in Support of SJ.)

As an initial matter, the court views this letter's value to Mr. Misner's case as dubious at best, since the letter had the stated goal of dispelling the impression that the USPS was purposely trying to drive out older employees in favor of younger ones. For example, the letter states that the USPS's message about developing talent to succeed outgoing executives "is not a code for preferring younger versus older successors." (Id.) In any event, taken in the light most favorable to Mr. Misner, this letter is evidence that at one corporate succession conference in 2000, some executives got the impression that Defendants wanted to drive out older executives and replace them with younger ones.[6]

This showing fails as direct evidence. Beyond stating that it must be so, Mr. Misner has not shown any logical connection between the impression that was made on these unspecified executives and the panel's decision a few years later not to place Mr. Misner in the five pools. With no factual support for making the leap from the conference to the panel's deliberations, the court does not view this as evidence that a reasonable jury could find probative of possible discrimination here. See, e.g., Timmerman, 483 F.3d at 1116 (in Title VII case, discounting evidence of possible sex discrimination that had occurred years before the allegedly discriminatory incident and was largely disparate from the incident.)

As further suggested evidence of pretext, Mr. Misner asserts that "there was an organizational-wide push to identify younger potential successors due to the concern over the

---

[6] Kenneth McArthur, a USPS executive, testified that he recalled that "younger people" were mentioned at the conference during discussions of "senior executives" possibly leaving, but gives no context to that vague statement such that a reasonable fact finder could infer a plan years later to discriminate against older workers. (Ex. I to Pl.'s Memo. in Support of SJ.)

greying of USPS's executive and management level employees." (Pl.'s Reply Memo. in Support of SJ at 2). But Mr. Misner's proof of this proposition fails on close inspection. That is, Mr. Misner points to Defendants' oft-stated concern that a high percentage of its executives were at or approaching retirement eligibility. The problem with Mr. Misner's position is that worrying about losing executives to retirement is logically and analytically distinct from a concern that the executives are "greying." Cf. Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993) (pointing out that age and years of service are distinct concepts). In other words, observing that a high percentage of management could soon retire and seeking to have ready replacements to ensure business continuity is not the same as trying to push out older executives because of stereotypes about age. See id. at 608-14. Put yet another way, without evidence otherwise, it is a mistake to assume that retirement eligibility is acting as a proxy for age. See, e.g., Maughan, 281 Fed. Appx. at 807 (not *per se* age discrimination to inquire into retirement plans of employees). Yet Mr. Misner has no evidence that Defendants believed that potential replacements for retiring executives should be of any particular age.[7] Accordingly, the court disagrees that a reasonable jury could look at Mr. Misner's evidence on this point and conclude that Defendants initiated a push to replace older executives with younger ones.

---

[7] Mr. Misner also argues that Mr. McArthur, who was Mr. Misner's supervisor, admitted that he had told his staff that younger people were critical to the future of the USPS. (Ex. Z to Pl.'s Memo. in Opp'n to SJ.) Mr. McArthur also "may have" said that the USPS should prepare younger people for management. (Id.) Mr. McArthur also jokingly referred to himself and Mr. Misner as "old goats." (Id.) But Mr. Misner does not have any evidence linking Mr. McArthur's statements to a similar policy or belief generally held by USPS management or, more importantly, by the panel making the relevant decisions here. Accordingly, the court does not find this evidence to reasonably support a finding that there as an organizational push to find younger executives or that the panel based its decisions on Mr. Misner's age.

Another fact Mr. Misner believes shows pretext is that the during the 2003 corporate succession process, Defendants accepted applications not only from candidates who would be immediately ready to fill the positions, but also from those who had high potential. Apparently, Defendants had not previously accepted applications for high potential candidates. Mr. Misner asserts that expanding the pool was meant to allow more young candidates to apply. But Mr. Misner gives no evidence that "high potential" was Defendants' code for "younger." See e.g., Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996) (not *per se* age discrimination to consider candidate's potential despite possible "correlation between age and potential"). The court has little problem accepting that older candidates could have "high potential" but not be "ready now." Consequently, the court does not believe that this evidence could reasonably relied on to find pretext.

As further support of his pretext argument, Mr. Misner points out that all but one of the "ready now" candidates for the pools who were over age 50 were rejected from the pools to which they applied. But Mr. Misner does not put this statistic into any context that a reasonable jury would need in making the pretext analysis. As explained by the Tenth Circuit in Furr:

> While statistical evidence may create an inference of discrimination, the evidence may be so flawed as to render it insufficient to raise a jury question. In this case, Plaintiffs' statistical evidence is so flawed because it failed to compare similarly situated individuals. Plaintiffs' statistics grouped all employees together regardless of specialty or skill and failed to take into account nondiscriminatory reasons for the numerical disparities. "'A plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals.'" Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext.

82 F.3d at 986-87 (citations omitted). Here, there are some key facts that a jury would need to

know about the other candidates over age 50 before reasonably crediting this statistic as proof of pretext. For example, it would be important to know whether "ready now" meant that the candidates were considered excellent, or if it meant only that they met minimum qualifications. It would also have been crucial to know about the strength of the "ready now" candidates over age 50, particularly in relation to others who applied for the pools. Without knowing anything but the age of the other "ready now" candidates, a reasonable jury could not infer age discrimination simply from a high failure rate. Accordingly, this fact does not support a finding of pretext. See id.

Relatedly, Mr. Misner contends that his "ready now" status and experience in executive level positions could show pretext. But in reviewing employment decisions, a jury is not to second guess or act as hiring departments. See Simms, 165 F.3d at 1330. Even if Defendants ignored or discounted Mr. Misner's experience, they were free to do so without being later questioned by a jury unless there is some independent evidence that Defendants took those actions because of Mr. Misner's age. Here, there is no such evidence.

Mr. Misner's evidence about the age of those selected for the pools and those hired for the positions comes closest to raising a fact question about pretext. But this evidence fails to do so on careful analysis. Defendants do not deny that all of those chosen for the pools were younger than Mr. Misner. Nor do they deny that some of those hired for positions out of the pool were significantly younger than Mr. Misner. But Mr. Misner bears the burden of proffering evidence that age discrimination led to the make up of the pools and drove the hiring decisions.

Honing in on Mr. Misner's evidence, he has not done so. Initially, as explained above,

the fact that 100% of those placed in the pools were younger than Mr. Misner does not alone reasonably lead to the conclusion that discrimination actually occurred.[8] See Furr, 82 F.3d at 986-87. Accordingly, Mr. Misner must show more to meet his burden here. In an attempt to do so, Mr. Misner points out that four of the panel members testified that Mr. Misner was either as qualified or more qualified than some of the younger candidates who were selected.[9] But as explained by the Tenth Circuit, "minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext" and "[t]o show pretext, the disparity in qualifications must be 'overwhelming.'" Jaramillo, 472 F.3d at 1308-09 (citation omitted). With Jaramillo's guidance, it is clear that evidence that Mr. Misner was as qualified as some younger candidates is not enough to reasonably suggest a pretext.

Moreover, the decisions of who was placed in the pools was made by the panel as a whole. If there was evidence that a majority of the panel members had thought Mr. Misner was more qualified than a successful younger candidate for a particular pool, then a reasonable fact finder could conclude that age was the deciding factor there. But that is not Mr. Misner's evidence. Instead, Mr. Misner cites testimony by some of panel members who thought that Mr. Misner was as qualified or more qualified than some successful younger candidates. (See Pl.'s Memo. in Support of SJ, SOF ¶¶ 29-30.) Reviewing Mr. Misner's best evidence on this point,

---

[8] Though this fact could lead one to reasonably suspect age discrimination, which is why it is enough to support the *prima facie* case on its own.

[9] Mr. Misner also points out that one panel member stated that he would have selected Mr. Misner for three pools, but this fact is not useful without further context about the comparative qualifications of those who were selected to those pools.

two panel members testified that they agreed that Mr. Misner was more qualified than one younger successful applicant. A reasonable fact finder could not rely on the views of two panel members as evidence that the entire panel concluded that Mr. Misner was more qualified than the younger successful applicants.

The court's conclusion on this point may have been different had the panel members who found Mr. Misner more qualified than younger applicants stated that difference in qualifications was "overwhelming." Jaramillo, 472 F.3d at 1309. But this was not the case here. Instead, the panel members' testimony on this point ranged from a simple statement that a panel member would have taken Mr. Misner over a younger candidate to a statement that "maybe" Mr. Misner was more qualified. Based on this analysis, the court concludes that an objective fact finder could not support a conclusion of age discrimination with Mr. Misner's evidence on this point.

Finally, Mr. Misner contends that inconsistencies in Defendants' explanations for not placing him in the pools supports a finding of pretext. But a close look at Defendants' explanations show that they are consistent. From the initial form notification to unsuccessful applicants, Defendants have made clear that the panel's decisions were merit-related. That the selection process involved the panel member's subjective evaluations of the candidate's qualifications rather than an unvarying objective set of criteria does not disprove that it was ultimately a merit-based process. Instead, the court's review of the evidence shows that the panel members had common objective goals in filling the pools, such a finding candidates with recent relevant experience to the position in question. A selection process that involves both objective goals and subjective evaluations is not alone evidence of pretext. See, e.g., Pippin, 440 F.3d at

1195.

It must be noted that the court has given careful thought to whether Mr. Misner's evidence, taken together as a whole, could reasonably support a finding of pretext.  See, e.g., Maughan, 281 Fed. Appx. at 807-09 (reversing grant of summary judgment against plaintiff in ADEA case in part because district court had not considered facts in context of each other.) Here, even taken together in the light most favor to him, Mr. Misner's facts could not support a finding that age discrimination motivated Defendants.  In broad strokes, Defendants were worried about a high percentage of their executive force being retirement eligible in the relatively near future.  At a conference in 2000, in the context of discussions on that topic, some unnamed executives got the impression that Defendants wanted to replace older executives with younger ones, perhaps because some reference to younger workers was made by someone.  In 2003, Defendants opened up their executive succession process to "high potential" candidates.  All candidates chosen for the pools that year and all candidates hired from the pools were younger than Mr. Misner's 56 years, some much younger.  Mr. Misner was not selected for any of the five pools to which he self-nominated, despite being qualified.  Nor were 9 out of the 11 other candidates over 50 who, like Mr. Misner, were "ready now" candidates.

While this story seems compelling on its face, missing is corroboration that age was more important than merit to those who determined the outcomes.  Defendants did not purposely create a situation where the bulk of its executives may soon retire.  It is simply a reality they face, not unlike many large corporations with baby boomers in charge.  Without some reliable indication that age was a decisive consideration to the decision makers who were working to remedy the

situation, a finding of age discrimination in this case would essentially be an educated guess. But courts have found that none of the types of facts Mr. Misner relies on here, and that make up his big picture story, can reasonably lead to a conclusion of discrimination. Accordingly, even when taken together in Mr. Misner's favor, a pretext finding would not be warranted in this case.

## ORDER

For the reasons set forth above:

Mr. Misner's motion for summary judgment (Dkt. No. 41) is DENIED and Defendants' motion for summary judgment (Dkt. No. 44) is GRANTED.

SO ORDERED this 26th day of June, 2009.

BY THE COURT:

_____
Clark Waddoups
United States District Judge